IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA – MIAMI DIVISION

Case No. 00-4518-Civ-Moore/O'Sullivan

MIAMI SPRINGS POWER BOAT CLUB, INC.;
and PAUL J. SLAYDEN,

Plaintiffs,

vs.

THE UNITED STATES OF AMERICA;
THE UNITED STATES DEPARTMENT OF THE
INTERIOR; THE SECRETARY OF THE INTERIOR;
THE NATIONAL PARK SERVICE; THE DIRECTOR
OF THE NATIONAL PARK SERVICE; THE STATE
OF FLORIDA; THE FLORIDA BOARD OF TRUSTEES
OF THE INTERNAL IMPROVEMENT TRUST FUND;
and THE GOVERNOR OF THE STATE OF FLORIDA,



JAN 2 5 2001

Defendants.

---

**PLAINTIFFS' RESPONSE TO THE MOTION TO DISMISS OF DEFENDANTS
STATE OF FLORIDA AND THE GOVERNOR OF THE STATE OF
FLORIDA AND MEMORANDUM OF LAW IN SUPPORT**

---

*Submitted by:*
Randolph L. Jones, Jr., admitted *pro hac vice*
David H. Herrold, admitted *pro hac vice*
CONNER & WINTERS,
A Professional Corporation
15 East Fifth Street, Ste. 3700
Tulsa, Oklahoma 74103–4344
Telephone:  (918) 586–5711
Telecopy:  (918) 599–9404 *fax*

–and–

Thomas J. Caldwell, Esq.
Michael R. Jenks, Esq.
WALTON LANTAFF SCHROEDER & CARSON
9350 South Dixie Highway, 10th Floor
Miami, Florida 33156
Telephone: (305) 671-1300
Facsimile: (305) 670–7065

Attorneys for the Plaintiffs, MIAMI SPRINGS POWER BOAT
CLUB, INC. and PAUL J. SLAYDEN

## **TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD FOR MOTIONS TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.    THE GOVERNOR IS NOT IMMUNE FROM THIS
        LAWSUIT UNDER THE ELEVENTH AMENDMENT . . . . . . . . . . . . . . . . . . 3

    II.   THE GOVERNOR IS SUBJECT TO PLAINTIFFS'
        CLAIM FOR MANDAMUS RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    III.  THE GOVERNOR, AS THE STATE OF FLORIDA'S
        CHIEF EXECUTIVE OFFICER AND RANKING MEMBER
        OF THE FLORIDA TRUST FUND, IS A PROPER PARTY
        TO THIS ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    IV.  PLAINTIFFS HAVE PREVIOUSLY ESTABLISHED
        SUBJECT MATTER JURISDICTION IN THIS CASE . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# **TABLE OF AUTHORITIES**

## **CASES**

*Aaron v. Cooper*,
  156 F.Supp. 220 (E.D. Ark. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Alden v. Maine*, 527 U.S. 706,
  119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Barkman v. Wabash, Inc.*,
  674 F.Supp. 623 (N.D. Ill. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Bradley v. Milliken*,
  433 F.2d 897 (6th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Brown v. Crawford County, Ga.*,
  960 F.2d 1002 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Brown v. Georgia Dept. of Review*,
  881 F.2d 1018 (11th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Butz v. Economou*, 438 U.S. 478,
  98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Byron v. University of Florida*,
  403 F.Supp. 49, (N.D. Fla. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Chaloux v. Killeen*,
  886 F.2d 247 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Citibank, N.A. v. K-H Corp.*,
  745 F.Supp. 899 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*City of Miami Beach v. Jonathon Corp.*,
  238 So.2d 516 (Fla. 3rd DCA 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*City of Miami Beach v. Sunset Islands 3 & 4 Property Owners Ass'n*,
  216 So.2d 509 (Fla. 3rd DCA 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99,
  2 L.Ed.2d 80 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Dept. of Transportation v. Burnette,*
 384 So.2d 916 (Fla 1st DCA 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Doe v. Wigginton,* 21 F.3d 733 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Florida East Coast Ry. Co. v. United States,*
 519 F.2d 1184 (5th Cir. [Fla.] 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Florida v. Scofield,*
 120 So.2d 825 (Fla. 5th DCA 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Harris v. Bush,*
 106 F.Supp.2d 1272 (N.D. Fla. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Harvest v. Bd of Pub. Instruction of Manatee County, Florida,*
 312 F.Supp. 269 (M.D. Fla. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Harvey M. Jasper Retirement Trust v. Ivax Corp.,*
 920 F.Supp. 1260 (S.D. Fla. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Hill v. United States,*
 751 F.Supp. 909 (D. Colo. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Hornfeld v. City of North Miami Beach,* 29 F.Supp.2d 1357 (S.D. Fla. 1998),
 *rev'd in part, aff'd in part, on other grounds,*
 208 F.3d 1010 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hymer v. Chai,* 407 F.2d 136 (9th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Johnsen v. Collins,* 875 F.Supp. 1571 (S.D. Ga. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Johnson v. Johnson,* 725 So.2d 1209 (Fla.3d DCA 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Jones v. Brown,* 82 So.2d 889 (Fla. 1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kempfer v. St. Johns River Water Mgmt. Dist.,*
 475 So.2d 920 (Fla. 5th DCA 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*LaTriest Restaurant v. Village of Port Chester,*
 188 F.3d 65 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Loewen v. Turnipseed,*
 488 F.Supp. 1138 (N. D. Miss. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Luckey v. Harris*, 860 F.2d 1012 (11th Cir. 1988), *cert. denied*,
  495 U.S. 957, 110 S.Ct. 2562, 109 L.Ed.2d 744 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Marapese v. State of R.I.*,
  500 F.Supp. 1207 (D. R.I. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*McNeill v. Southern R. Co.*,
  202 U.S. 543, 26 S.Ct. 722, L.Ed. 1142 (1906) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*McSween v. State Live Stock Sanitary Board of Florida*,
  122 So. 239 (Fla. 1929) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Medina v. Minerva*, 907 F.Supp. 379 (M.D. Fla. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Muckaway v. Craft*, 789 F.2d 517 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Orange City Water Co. v. Mason*, 166 So.2d 449 (Fla. 1964),
  *disapproved of on other grounds*, 188 So.2d 306 (Fla. 1966) . . . . . . . . . . . . . . . . . . . . . . 11

*Oyler v. Boles*, 368 U.S. 448,
  82 S.Ct. 501, 7 L.Ed.2d 446 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Puckett v. Gentry*, 577 So.2d 965 (Fla. 5th DCA),
  *rev. denied*, 591 So.2d 183 (Fla. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Reese v. Baron*, 256 So.2d 70 (Fla. 3rd DCA 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Robinson v. Kansas*,
  117 F.Supp.2d 1124 (D. Kan. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Rolston v. Mo. Fund Comm'rs*,
  120 U.S. 390, 7 S.Ct. 599, 30 L.Ed. 721 (1887) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sheley v. Florida Parole Commission*,
  703 So.2d 1202 (Fla. 1st DCA 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Smith v. Ross*, 482 F.2d 33 (6th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Smith v. State*, 696 So.2d 814 (Fla. 2d DCA 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sportsmen's Wildlife Defense Fund v. U.S. Dept. of Interior*,
  949 F.Supp. 1510 (D. Colo. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*State v. Gamble*, 339 So.2d 694 (Fla. 2d DCA 1976),
    *cert. denied*, 345 So.2d 422 (Fla. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Sterling v. Constantin*,
    287 U.S. 278, 53 S.Ct. 190, 77 L.Ed. 375 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United Mine Workers v. Gibbs*,
    383 U.S. 715, 86 S. Ct. 1130, 16 L.Ed. 2d 218 (1966) . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*United States v. Collins*,
    603 F.Supp. 301 (S.D. Fla. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Domme*,
    753 F.2d 950 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Yonkers Bd. of Educ.*,
    893 F.2d 498 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Vernon v. Medical Mgmt. Assoc. of Margate, Inc.*,
    912 F.Supp. 1549 (S.D. Fla. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Weeks v. Golden*,
    764 So.2d 633 (Fla. 1st DCA 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Willits v. Askew*, 279 So.2d 1, 3 (Fla. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

*Worcester County Trust Co. v. Riley*,
    302 U.S. 292, 58 S.Ct. 185, 82 L.Ed.2d 268 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## **STATUTES**

Eleventh Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5 U.S.C. §§ 500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 16

16 U.S.C. §§ 1 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 15, 16

16 U.S.C. §§ 410gg~1 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 16

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. § 1361 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 12

28 U.S.C. § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

42 U.S.C. §§ 4321 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 16

## FLORIDA STATUTES

Fla. Const. Art. IV, § 4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

18 Fla. Stat. § 253.02 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 Fla. Stat. § 254.02(1) (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 Fla. Stat. §§ 267.011 (2000) *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6, 8, 9, 14, 15, 16

18 Fla. Stat. § 267.031 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## FEDERAL RULES

Fed.R.Civ.P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed.R.Civ.P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed.R.Civ.P. 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed.R.Civ.P. 41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## OTHER AUTHORITIES

Fla.R.Civ.P. 1.630 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fla. Const. Art. IV, § 4(2000) *Commentary to 1984, 1986 and 1998 Amendments* . . . . . . . . . . 6

### PLAINTIFFS' RESPONSE TO THE MOTION TO DISMISS
### OF DEFENDANT GOVERNOR OF THE STATE OF
### FLORIDA AND MEMORANDUM OF LAW IN SUPPORT

Plaintiffs MIAMI SPRINGS POWER BOAT CLUB, INC. and PAUL J. SLAYDEN (collectively, "Plaintiffs"), hereby respond to *Defendant Governor of the State of Florida's Motion to Dismiss Plaintiffs' Complaint with Supporting Memorandum of Law* (the "Motion") filed against them by the Governor of the State of Florida (the "Governor").[1] In support, Plaintiffs submit this Memorandum of Law.

### INTRODUCTION

The two Plaintiffs in this action are both the holders of "Campsite Leases" to stilted structures located in a community out in the Biscayne Bay known as "Stiltsville." Plaintiffs filed this action on November 29, 2000 to preserve the existence of their stilted structures by primarily obtaining injunctive relief from the Court which would prevent the United States of America and the other federal Defendants, the State of Florida, the Florida Board of Trustees of the Internal Improvements Trust Fund (the "Florida Trust Fund")[2] and the Governor from enforcing the termination provisions of their particular Campsite Leases and evicting them from their stilted structures. Plaintiffs also sought additional prospective mandatory, declaratory and injunctive relief as to State of Florida, the Florida Trust Fund and the Governor. This Court granted Plaintiffs a Temporary Restraining Order (the "TRO") on November 29, 2000, which was later converted to a

---

[1] Plaintiffs have tendered to all counsel in this case a Stipulation Of Dismissal Without Prejudice pursuant to Fed.R.Civ.P. 41(a)(1)(*ii*), ultimately to be filed in this case as maintenance of this lawsuit against the State of Florida is unnecessary if the Florida Trust Fund and the Governor remain party defendants to this action.

[2] Defendant Florida Board of Trustees of the Internal Improvement Trust Fund earlier filed its separate Motion to Dismiss, to which Plaintiffs have already responded. The Governor is also a member of the Florida Trust Fund. *See* 18 Fla. Stat. § 254.02(1) (2000). Indeed, a majority of the Florida Trust Fund is comprised of the Governor's cabinet. *See id.*; Fla. Const. Art. IV, § 4(a).

Preliminary Injunction after a hearing held on December 18, 2000.

The Governor filed his Motion pursuant to Fed.R.Civ.P. 12(b)(6), contending that: (i) the Governor is not a proper party to this action; (ii) he is immune from suit under the Eleventh Amendment to the United States Constitution; (iii) he is not subject to mandamus under 28 U.S.C. § 1361; and (iv) Plaintiffs have not established this Court's jurisdiction. *See* Motion at 1-2. Each of these contentions is addressed below.

## STANDARD FOR MOTIONS TO DISMISS

Under Rule 12(b)(6), a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Harvey M. Jasper Retirement Trust v. Ivax Corp.*, 920 F.Supp. 1260, 1265 (S.D. Fla. 1995) (same; issue is not whether plaintiff will prevail but whether plaintiff is entitled to offer evidence to support his claims). Indeed, to succeed on a motion to dismiss, plaintiff's complaint, factually accepted as true, must evidence that there is no set of facts entitling him to relief. *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1010 (11th Cir. 1992). The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of a statement of claim for relief; such motions are viewed with disfavor and rarely granted. *Vernon v. Medical Mgmt. Assoc. of Margate, Inc.*, 912 F.Supp. 1549, 1553 (S.D. Fla. 1996). It is not intended to allow a decision on the merits of a plaintiff's claims, *Barkman v. Wabash, Inc.*, 674 F.Supp. 623, 629 (N.D. Ill. 1987), nor it is an appropriate vehicle to strike objectionable portions of the complaint, *Hill v. United States*, 751 F.Supp. 909, 910-11 (D. Colo. 1990), nor is it designed to allow the district court to weigh any evidence which plaintiff offers or intends to offer. *Citibank, N.A. v. K-H Corp.*, 745 F.Supp. 899, 902 (S.D.N.Y. 1990).

2

## ARGUMENTS AND AUTHORITIES

### I.    THE GOVERNOR IS NOT IMMUNE FROM THIS LAWSUIT UNDER THE ELEVENTH AMENDMENT.

The Governor contends that the Eleventh Amendment to the United States Constitution bars

Plaintiffs' lawsuit against him because the instant suit does not qualify under any exception to the

general immunity provided by such Amendment.  *See* Motion at 7-9. Contrary to this argument,

an exception to the general application of Eleventh Amendment immunity does apply in this action,

precluding dismissal of the case on this ground, as well as on any other grounds, this immunity does

not bar all actions against a state official.

Even in the absence of a waiver of such immunity, Florida and federal courts alike have held

that the doctrine of sovereign immunity does not necessarily bar the filing of an action seeking

declaratory or injunctive relief.  In fact, in *Kempfer v. St. Johns River Water Mgmt. Dist.*, 475 So.2d

920 (Fla. 5th DCA 1985), the District Court of Appeals in a case seeking declaratory and equitable

relief concerning the cancellation of deeds and the construction of an easement (considered to be

'inverse condemnation') held:

> [W]e do not think a suit for declaratory relief to construe an easement granted
> to the state or a suit for rescission, had fraud been properly pleaded, is barred
> by the doctrine of sovereign immunity, despite the fact that the express
> waiver in section 768.28(1) does not specifically mention these causes of
> action.

*Id.* at 924.  *See also Dept. of Transportation v. Burnette*, 384 So.2d 916, 922 (Fla 1st DCA 1980)

(noting sovereign immunity is no longer a serious impediment to a suit for injunction, referencing

*Jones v. Brown*, 82 So.2d 889 (Fla. 1955)).

Federal courts have also held that a state's sovereign immunity does *not* bar certain actions

against <u>state officers</u> for injunctive or declaratory relief.  *See Alden v. Maine*, 527 U.S. 706, 756, 119

3

S.Ct. 2240, 2267, 144 L.Ed.2d 636 (1999).[3]  Immunity under the Eleventh Amendment does not insulate from suit seeking a federal injunction to require a <u>state officer</u> to comply with federal law. In fact, the Eleventh Circuit has held, in *Brown v. Georgia Dept. of Review*, 881 F.2d 1018 (11th Cir. 1989), that the Eleventh Amendment does *not* serve to bar a district court from ordering <u>state personnel board members</u> to comply with state law since that relief was ordered under federal constitutional due process rights.  *Id.* at 1023-24.  In *Luckey v. Harris*, 860 F.2d 1012 (11th Cir. 1988), *cert. denied*, 495 U.S. 957, 110 S.Ct. 2562, 109 L.Ed.2d 744 (1990), the Eleventh Circuit held that a criminally-accused indigent was not barred by the Eleventh Amendment from seeking injunctive relief against <u>state officials</u> in their official capacities to provide him with adequate representation commensurate with constitutionally-required standards.  *Id.* at 1014-15.

Furthermore, various federal courts have held that the Eleventh Amendment does not bar actions against <u>state officials in their official capacities</u> in which only prospective relief (declaratory or injunctive) is sought.  *See Medina v. Minerva*, 907 F.Supp. 379, 383 (M.D. Fla. 1995); *Byron v. University of Florida*, 403 F.Supp. 49, 51 (N.D. Fla. 1975); *Chaloux v. Killeen*, 886 F.2d 247, 252 (9th Cir. 1989).[4]  Even if a declaratory and injunctive action could place a financial burden upon the state treasury, courts have found that the action is permissible under the Eleventh Amendment so long as that burden is ancillary to the prospective relief sought.  *Marapese v. State of R.I.*, 500

---

[3]  There is a question whether a lawsuit naming state officials or agencies as defendants actually is an "action against the state" as contemplated by the Eleventh Amendment. *See Rolston v. Mo. Fund Comm'rs*, 120 U.S. 390, 7 S.Ct. 599, 610, 30 L.Ed. 721 (1887) (suit against a state officer to compel him to do what a statute requires of him is a suit against the officer and not against the state); *McNeill v. Southern R. Co.*, 202 U.S. 543, 26 S.Ct. 722, 725, 50 L.Ed. 1142 (1906) (suit to enjoin enforcement of orders of state corporation commission relating to interstate commerce is not a suit against the state).

[4]  *See also* additional authority cited in Plaintiffs' Response to the Florida Trust Fund's Motion at 5, n.2.

F.Supp. 1207, 1209 and n.2 (D. R.I. 1980).[5] The Supreme Court has also held that suits restraining action of state officials *can be* prosecuted, consistent with Eleventh Amendment immunity, when the action sought to be restrained is without authority of state law or contravenes the laws or Constitution of the United States. *Worcester County Trust Co. v. Riley*, 302 U.S. 292, 297, 58 S.Ct. 185, 187, 82 L.Ed.2d 268 (1937).

In this action, Plaintiffs seek prospective declaratory and injunctive relief against the Governor and the Florida Trust Fund until state and federal governments both meet their obligations under state and federal law under the Florida Historical Resources Act, 18 Fla. Stat. §§ 267.011 *et seq.* ("FHRA"), the National Park Service Organic Act, 16 U.S.C. §§ 1 *et seq.* ("NPSOA"), the Biscayne National Park Organic Act, 16 U.S.C. §§ 410gg-1 *et seq.*, the Administrative Procedure Act, 5 U.S.C. §§ 500 *et seq.* (the "APA"), and the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321 *et seq.* ("NEPA") and regulations promulgated thereunder. Plaintiffs also seek to compel the State's compliance with the FHRA, which can be accomplished only by and through the State's executive branch, of which the Governor is chief executive officer.

The Governor is the chief executive officer of the State of Floridae responsible for setting statewide policy. *See, e.g., United States v. Domme*, 753 F.2d 950, 956-57 (11th Cir. 1985). He therefore bears a duty appertaining to execution of the laws as they exist. *McSween v. State Live Stock Sanitary Board of Florida*, 122 So. 239, 246 (Fla. 1929) (citing Advisory Opinion, 6 So. 925). With respect to the FHRA, the Division of Historical Resources, created by 18 Fla. Stat. § 267.031, is to be provided assistance from "all law enforcement agencies and offices" in the carrying out of

---

[5] *See also Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994); *United States v. Yonkers Bd. of Educ.*, 893 F.2d 498, 503 (2d Cir. 1990); *Johnsen v. Collins*, 875 F.Supp. 1571, 1577 (S.D. Ga. 1994) (even if it would have a "substantial ancillary effect" on state treasury);*Loewen v. Turnipseed*, 488 F.Supp. 1138, 1152 (N. D. Miss. 1980).

its duties under the FHRA.[6]  *See id.* at § 267.031(4).  Moreover, Art. IV, § 1 of the Florida

Constitution vests the Florida Governor with the following duties:

> The supreme executive power shall be vested in a governor . . . .  The
> governor shall take care that the laws be faithfully executed . . . .  The
> governor shall have the power to . . . execute the laws of the state . . . .

*See id.* §1(a), (d).

Thus, compliance with Florida law (including the FHRA) may be accomplished by and

through the executive branch of Florida government.  Indeed, the Governor is the ranking member

of the Florida Trust Fund, established by 18 Fla. Stat. § 253.02 (2000) for the purpose of assuring

proper application of the Internal Improvement Trust Fund.  As a member of the Florida Trust Fund,

the Governor and remaining six state officials therein are charged with responsibilities requiring that

they:  "shall remain subject to and pay, fulfill, perform, and discharge all debts, duties, and

obligations of their trust, existing at the time of the enactment hereof or provided in this chapter."

*Id.* § 253.02(1).  *See also* Fla. Const. Art. IV, § 4 (2000), *Commentary to 1984, 1986, and 1998*

*Amendments* ("The trustees of the internal improvement trust fund, the land acquisition trust fund,

and the department of law enforcement are headed by the governor and cabinet").

Here, Plaintiffs have sought prospective declaratory and injunctive relief against the

Governor and the Florida Trust Fund, to prevent them from enforcing the termination provisions of

the Campsite Leases governing these two Stiltsville structures until the requisite compliance with

---

[6]  On the issue before this Court, the Governor has previously written that the Stiltsville properties
are "unique and historical treasures," and that they "stand today as a sturdy reminder of the peaceful
coexistence between the people of South Florida and her environment . . . a part of Old Florida lore and New
Florida literature, an incomparable curiosity for visitors and residents alike, and a state treasure with a value
that cannot be underestimated by our federal government."  *See* Complaint APPENDIX I (Exh. 33).  For those
reasons on April 17, 1999, the Governor specifically joined the Florida "State Historic Preservation Officer
and other friends of Stiltsville in supporting efforts to protect these historic landmarks."  *Id.*  Nonetheless,
Plaintiffs know of no State action which has been taken in compliance with the FHRA concerning Stiltsville.

6

the Florida Historical Resources Act, 18 Fla. Stat. §§ §§ 267.011 *et seq.*, is performed and until the federal government meets its own obligations under the NPSOA, the APA, NEPA and the Biscayne National Park Organic Act. Without the pendency of this action or the benefit of temporary and preliminary injunctive relief issued herein against *all* Defendants, the Florida Trust Fund, as lessor of the Campsite Leases upon *reverter*,[7] would be completely free to terminate the Campsite Leases and evict Plaintiffs from their stilted structures and itself cause those structures to be demolished or removed from the Biscayne National Park. This, however, would contravene federal law set forth in the NPSOA and the Biscayne National Park Organic Act created by Pub.L. 96-287 on June 28, 1980 (Complaint APPENDIX 1 [Exh. 6]), which provides:

> In order to preserve and protect for the education, inspiration, recreation, and enjoyment of present and future generations a rare combination of terrestrial, marine and amphibious life in a tropical setting of great natural beauty, there is hereby established Biscayne National Park . . . ;

and the property transfer to the USA from the State of Florida was described as:

> [P]roperty owned by the State of Florida or any political subdivision thereof may be acquired only by donation, and subject to such reservations and restrictions as may be provided by Florida law.

---

[7]   The Florida Trust Fund contends that the *reverter* clause contained in the State of Florida's Dedication (Complaint APPENDIX 1 [Exh. 11]) is merely a future contingent interest in the submerged lands earlier granted to Defendant United States of America. Plaintiffs would show the Court that had this lawsuit not been filed, the *reverter* clause of the Dedication would indeed have been triggered, as demonstrated by the federal Defendants' intent to demolish the Stiltsville structures (on this ground, *see* argument and authorities contained in Plaintiffs' Response To The United States Of America's Motion filed previously herein).

As noted by the Supreme Court in *Butz v. Economou*, 438 U.S. 478, 503, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978), "Declaratory or injunctive relief is *useless* to a person who has already been injured." (Emphasis added.) Thus, in order to obtain prospective injunctive, declaratory and mandamus relief against all of the Defendants in this action, Plaintiffs should not be forced to have waited until they sustained irreparable and irreversible harm (the lapsing of their Campsite Leases), triggering the application of the *reverter* clause of the Dedication, before they sought to sue the Defendants.

16 U.S.C. § 410gg-1(a) and Complaint APPENDIX I (Exh. 6) § 102(a).[8]  Such action by the Florida

Trust Fund would also contravene the clear mandate of 16 U.S.C. § 410gg-2, which requires that

the Secretary of the Interior "*shall preserve* and administer the park in accordance with the

provisions of sections 1 and 2 to 4 of this title, as amended and supplemented." (Emphasis added.)

Therefore, dismissing the Governor and the Florida Trust Fund from this action and allowing

termination of the Campsite Leases and eviction Plaintiffs and/or enabling the NPS to deem the

Campsite Leases terminated and to evict Plaintiffs thereby resulting in the removal of Stiltsville from

existence in the Biscayne Bay, directly impinges upon the language and the spirit of the NPSOA and

the Biscayne National Park Organic Act.

Further, such unfettered action by the Governor or the Florida Trust Fund, without due

deference to or compliance with the FHRA, may also deny Plaintiffs (the owners of the stilted

structures constructed upon their Campsite Leases) equal application and equal protection of

critically-important Florida law.  In this regard, *see* Plaintiffs' Response to the Florida Trust Fund's

Motion, at 7-8.  Additionally, the Florida Trust Fund's (and hence the Governor's, as the ranking

member of the Florida Trust Fund) failure to extend the Campsite Leases when other similar leases

are now being extended by the State may well constitute an additional violation of the Equal

Protection Clause of the Fourteenth Amendment to the United States Constitution. *See* Complaint

APPENDIX I (Exhs. 22 and 16 at 3 (2d ¶)).

---

[8]  Indeed, under the State of Florida Dedication (Complaint APPENDIX I [Exh. 11]), the grant to the United States by the Florida Trust Fund intimates the United States' supervision, management, protection and preservation of "the natural, *cultural, and historical* features for the use and enjoyment of present and future generations . . . ." in effect requiring that the federal government preserve and protect Stiltsville as a State historical landmark and treasure. *See* Complaint APPENDIX I (Exhs. 33-35; 37; 41-43) (emphasis added). This language in the Dedication, along with the reverter clause contained at ¶ 6 therein, constitute the underpinnings of the drafting and implementation of the Biscayne National Park Organic Act within the control of NPSOA.

The Equal Protection Clause contained in the Fourteenth Amendment was designed to assure that individuals who are similarly situated will not be treated differently. *Id.; United States v. Collins*, 603 F.Supp. 301, 305 (S.D. Fla. 1985). Selective enforcement of a state law can be actionable under certain circumstances. *See Smith v. Ross*, 482 F.2d 33, 36 (6th Cir. 1973) (law enforcement officer may be liable for violating equal protection for failing to enforce the law equally and fairly); *Muckaway v. Craft*, 789 F.2d 517, 523 (7th Cir. 1986) (setting forth the test for alleging state's failure to enforce its own laws as violative of equal protection rights); *LaTriest Restaurant v. Village of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) (same); *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962) (Equal Protection Clause prohibits selective enforcement based upon an unjustifiable standard such as race, religion or *other* arbitrary classification). Thus, releasing the Governor or the Florida Trust Fund from this lawsuit, leaving either of them open to termination of the Campsite Leases and evicting Plaintiffs from their stilted structures while also failing or refusing to review Stiltsville under specific guidelines set forth in the FHRA, when they comply with and apply that law in other similarly-situated cases all the time, unlawfully treads upon Plaintiffs' rights to equal protection of the law.

This lawsuit against the Governor as the State's chief executive officer and the ranking member of the Florida Trust Fund for prospective declaratory and injunctive (prohibitive and mandatory) relief, to prevent further violation of federal law and requesting compliance with Florida law, falls squarely within the exception to the general immunity otherwise afforded by the Eleventh Amendment. As such, dismissal of the Governor would be improper in this action.[9]

_____

[9]     This is particularly true since the United States, in its Consolidated Response to Plaintiffs' Motion for Injunctive Relief, expressly asserted that the Dedication places no "restrictions upon the United States in its management of the land and preservation of cultural and historical features." The United States cited *Johnson v. Johnson*, 725 So.2d 1209 (Fla 3d DCA 1999), as holding that a recitation provision in a

## II.   THE GOVERNOR IS SUBJECT TO PLAINTIFFS' CLAIM FOR MANDAMUS RELIEF.

The Governor also contends that Plaintiffs have failed to state a claim for mandamus against him.  Like the Florida Trust Fund, he argues that mandamus relief under 28 U.S.C. § 1361 is improper because that statute only applies to the United States and its officers or agencies.  *See* Motion at 10-11.  While § 1361 may only be applicable to the United States and its officers or agencies, the Governor overlooks the fact that mandamus relief is otherwise allowed under Florida law, providing Plaintiffs with a remedy in this Court under the doctrine of pendent jurisdiction and 28 U.S.C. § 1367.[10]

---

document is not binding.  While the court in *Johnson* does indeed state that a recitation paragraph does not override an operative paragraph in a contract, more germane to this case is the fact that the court further held that where the operative provision is ambiguous, then recital provisions are utilized to evidence the party's or parties' intent.  In the instant case, there is no question that the Dedication requires the preservation of historical features, *i.e.* Stiltsville, because the fourth recitation paragraph amplifies an otherwise ambiguous operative paragraph with respect to what is to be preserved.

[10]    As the Practice Commentary to § 1367 states about the supplemental jurisdiction concept contained in the section:

> As long as a U.S. district court has original jurisdiction of a claim, subdivision (a) of the new § 1367 *dictates* that the court
>
> > shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.
>
> The conferral is in mandatory terms—the court "shall" have the supplemental jurisdiction—but subdivision (c), treated below, gives the court discretion to "decline to exercise" the supplemental jurisdiction in various circumstances [if the claim raises novel or complex issue of state law, if the state claim predominates over federal claims, if the federal claims are all dismissed, or for other compelling reasons for declining jurisdiction].
>
> The conferral is in very broad terms, and by using the "case or controversy" standard found in the Constitution's own statement of the outer limits of federal jurisdiction, Congress indicates that it wants supplemental jurisdiction, at least in first instance— subject to its rejection as a matter of judicial discretion under subdivision (c)—to go to the constitutional limit, where it appeared to be carried in the [*United Mine Workers v.*] *Gibbs*[, 383 U.S. 715, 86 S.Ct. 1130 (1966)] case....

Under Florida law, mandamus is an action at law. *Florida v. Scofield*, 120 So.2d 825, 826 (Fla. 5th DCA 1960); *Sheley v. Florida Parole Commission*, 703 So.2d 1202, 1204 (Fla. 1st DCA 1997). Mandamus is also subject to equitable principles. *City of Miami Beach v. Jonathon Corp.*, 238 So.2d 516, 519 (Fla. 3rd DCA 1970). Pleading a claim for the issuance of mandamus relief under Florida law is even set forth in Florida's civil procedure rules in Fla.R.Civ.P. 1.630, and this Rule requires that the initial pleading merely contain: (i) facts upon which plaintiff relies for relief; (ii) a request for relief sought; and (iii) *if desired*, argument in support of the request with citations of authority. *See* Fla.R.Civ.P. 1.630.

A mandamus request contained in an initial filing in circuit court is clearly a "civil action" and can be used to cause a State official to comply with the laws of the State of Florida. *Weeks v. Golden*, 764 So.2d 633, 635 (Fla. 1st DCA 2000) (reversing trial court's denial of petition for writ of mandamus against State Attorney General's office to comply with public record disclosure laws). The Governor is *not* immune from being coerced by mandamus in certain circumstances. *Willits v. Askew*, 279 So.2d 1, 3 (Fla. 1973). *See also Orange City Water Co. v. Mason*, 166 So.2d 449, 450 (Fla. 1964) (mandamus is appropriate remedy against state officers who refuse to perform statutory duty), *disapproved of on other grounds*, 188 So. 2d 306 (Fla. 1966); *Smith v. State*, 696 So.2d 814, 815 (Fla. 2d DCA 1997) ("Mandamus is a common law remedy used to enforce an 'established legal right by compelling a person in an official capacity to perform an indisputable ministerial duty required by law;' citing *Puckett v. Gentry*, 577 So.2d 965, 967 (Fla. 5th DCA), *rev. denied*, 591 So.2d 183 (Fla. 1991)); *State v. Gamble*, 339 So.2d 694, 695 (Fla. 2d DCA 1976), *cert. denied*, 345

(Emphasis added.) Although the claims in this case may be novel and are complex, they largely entail novelties or complexities of federal law, as a substantial majority of Plaintiffs' claims are federally-based. Plaintiffs assert that none of the factors set forth in § 1367(c) are present in this case to provide any reason for this Court to decline to exercise supplemental jurisdiction.

So.2d 422 (Fla. 1977) (mandamus is used to enforce clear legal right to performance of clear legal duty); *Reese v. Baron*, 256 So.2d 70, 72 (Fla. 3rd DCA 1971) (mandamus will lie to require a public officer to act, although it will not require a particular holding or judgment by a public officer); *City of Miami Beach v. Sunset Islands 3 & 4 Property Owners Ass'n*, 216 So.2d 509, 511 (Fla. 3rd DCA 1968) (mandamus is recognized remedy to require public official, clothed with authority, to discharge his duty). Plaintiffs' right to mandamus relief is clearly accorded by the law of the State of Florida, not necessarily 28 U.S.C. § 1361.[11]

Consequently, under the doctrine of pendent jurisdiction, this Court retains jurisdiction over state mandamus claims which are pending along with the federal claims in this action. As the Fifth Circuit held in *Florida East Coast Ry. Co. v. United States*, 519 F.2d 1184 (5th Cir. [Fla.] 1975), in order for a federal court to resolve a state issue under pendent jurisdiction, there must be present a claim involving a substantial federal question, the state and federal claims must derive from a common nucleus of facts and they must be such that were it not for their disparate federal and state character, plaintiff would ordinarily be expected to try them in one proceeding. *Id.* at 1193 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L.Ed. 2d 218 (1966)). Pendent

---

[11]     In fact, in Plaintiffs' Complaint they merely sought "mandamus" relief against the Defendants (inclusive of the Florida Trust Fund and Governor) in this matter. *See* Complaint, ¶¶ 83-99. Nowhere in that Complaint did Plaintiffs specify what statutory or legal principal they relied upon to request mandamus relief, nor should they have been necessarily required to do so as to mandamus relief or any other relief sought under the "notice pleading" provisions of Fed.R.Civ.P. 8(a), (e) (specifically subsection (a): "A pleading which sets forth a claim for relief . . . shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment . . . ." and subsection (e): "(1) each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required."). *See, e.g., Hornfeld v. City of North Miami Beach*, 29 F.Supp.2d 1357, 1370 (S.D. Fla. 1998) (citing Rule 8e)), *rev'd in part, aff'd in part, on other grounds*, 208 F.3d 1010 (11th Cir. 2000).

jurisdiction, similar to Rule 19, was devised to avoid the waste and inefficiency resulting from the fragmentation of a single action into separate proceedings before state and federal courts and to encourage a party who has a claim presenting substantial federal question, mixed with a non-federal claim, to take his bundle of claims to the federal court. *Hymer v. Chai*, 407 F.2d 136, 137 (9th Cir. 1969).

This action entails substantial federal questions but, in addition to injunctive relief, only one state claim against the Governor, the State of Florida and/or the Florida Trust Fund –for mandamus relief. Both the federal and state claims are derived from a common nucleus of operative facts surrounding the historical and cultural value of Stiltsville, the grant of the Dedication to the United States and the ultimate resolution of the Campsite Leases and Plaintiffs' interests therein. Because the federal claims so predominate this case, any plaintiff raising these claims would ordinarily be expected to try them in one proceeding in federal court. Accordingly, Plaintiffs have stated a claim for mandamus relief against the Governor, as chief executive officer of the State of Florida and ranking member of the Florida Trust Fund, and that claim is properly before the Court in this action.

### III.   THE GOVERNOR, AS THE STATE OF FLORIDA'S CHIEF EXECUTIVE OFFICER AND RANKING MEMBER OF THE FLORIDA TRUST FUND, IS A PROPER PARTY TO THIS ACTION.

In its Motion the Governor also contends that he is not a proper party to this action. With only a single citation of authority not squarely on point in this matter, he argues that this lawsuit improperly names him as a party and fails to establish that he bears sufficient connection to that real property to make him a "proper party" in this lawsuit. *See* Motion at 3-5. Contrary to these

contentions, the Governor has been properly named in this action.[12]

Although Plaintiffs would agree with the Governor that the general grant of executive power to him to enforce Florida law is insufficient to make him a proper party to an action *seeking to challenge the constitutionality of a statute* (see *Harris v. Bush*, 106 F.Supp.2d 1272, 1276-77 (N.D. Fla. 2000)), the constitutionality of a statute is not what is at issue in this case. What is at issue in *this* case is whether the State of Florida, by and through the Florida Trust Fund and the Governor as its chief executive officer,[13] should be prohibited from terminating the Campsite Leases and evicting Plaintiffs while the Governor is also compelled to require performance of the review set forth by Florida law under the FHRA and to ensure equal treatment and protection under the Fourteenth Amendment during the interim review period. It is a rational, logical principle of law that any governor, as a state's chief executive officer, be subject to action in federal court for the purpose of protecting rights provided by the United States Constitution or federal law. *Harvest v. Bd of Pub. Instruction of Manatee County, Florida*, 312 F.Supp. 269, 279-80 (M.D. Fla. 1970). Indeed, the district court in *Harvest* noted that the governor of the state is in no different position from that of other state officials in this context, *id.* at 279 (quoting from *Sterling v. Constantin*, 287 U.S. 278, 292, 53 S.Ct. 190, 193, 77 L.Ed. 375 (1932)), and that a lawsuit properly names the governor when it seeks to enjoin his and other officials' commission of acts beyond their lawful authority and contrary to the Federal Constitution. *Id.* (quoting from *Aaron v. Cooper*, 156 F.Supp.

---

[12] Fed.R.Civ.P. 19(a) also bears upon the necessity of requiring the presence of the Governor in this case as an indispensable party to this action. Plaintiffs would direct the Court's attention to their previously-filed Response to the Florida Trust Fund's Motion at 9-12 on the Rule 19 issue. As set forth in that argument and demonstrated by Rule 19(a), the Governor and the Florida Trust Fund appear to be necessary and indispensable parties in this action.

[13] *See* Part I, *supra*.

220, 226 (E.D. Ark. 1957)). *See also Sportsmen's Wildlife Defense Fund v. U.S. Dept. of Interior*, 949 F.Supp. 1510, 1515 (D. Colo. 1996) (citing Colorado Constitution's general grant of executive power to governor to enforce state law, governor was proper party to action seeking to enjoin expansion of state prison facility which would impinge upon federal protections); *Robinson v. Kansas*, 117 F.Supp.2d 1124 (D. Kan. 2000) (governor is proper party to action seeking to prohibit enforcement of state law); *Bradley v. Milliken*, 433 F.2d 897, 905 (6th Cir. 1970) (reversing dismissal of Michigan governor and attorney general as parties defendant, those parties were proper parties to action seeking injunction to implement city school board's integration plan). Florida law also explicitly provides that the Governor is subject to the court's extraordinary power of mandamus. *See Willits*, 279 So.2d at 3, *supra*.

Because the Governor, the State of Florida's chief executive officer, and those officials, entities or persons under his executive charge (including his cabinet members who effectively comprise a majority of the Florida Trust Fund) fail, neglect or refuse to perform what is required of them under the FHRA, the Dedication and the Biscayne National Park Organic Act with regard to Stiltsville, they put Plaintiffs as well as the public at risk of losing Plaintiffs' stilted structures, and thus a State of Florida cultural and historical treasure in the process. In fact, the Governor and those under his charge, by failing to comply with the FHRA and the resulting obligation to ensure compliance with the Dedication and the Biscayne National Park Organic Act in seeking the preservation of Stiltsville, contravene the spirit and the language of federal law. The NPSOA and the Biscayne National Park Organic Act, based upon explicit preservation language contained in the Florida Trust Fund's Dedication, charge the United States with the supervision, management, protection and preservation of "the natural, *cultural, and historical* features for the use and

15

enjoyment of present and future generations . . . ," and mandate the preservation of Stiltsville in its entirety until completion of the review under the FHRA and federal statutes. *See* Complaint APPENDIX 1 (Exh. 11) (emphasis added). Accordingly, the Governor is a proper party to these proceedings, and his arguments to the contrary fail.

## IV.   PLAINTIFFS HAVE PREVIOUSLY ESTABLISHED SUBJECT MATTER JURISDICTION IN THIS CASE.

Finally, the Governor urges dismissal of this case on the ground that Plaintiffs have not established subject matter jurisdiction in this case. He argues in support that because Plaintiffs' Complaint provides that the Court has such jurisdiction pursuant to 28 U.S.C. § 1331, the federal statutes otherwise cited by Plaintiffs do not create a private remedy. *See* Motion at 9-10. Contrary to these contentions, Plaintiffs have exhaustively and adequately demonstrated in their Response to the United States of America's Consolidated Motion (filed January 3, 2001) the federal bases for this Court's jurisdiction in this case.

Because Plaintiffs have previously briefed the issue of jurisdiction, they need not reiterate that authority in this Response and would therefore direct the Court's attention to their earlier-filed pleading with regard to the jurisdiction argument. *See* Response to United States of America's Consolidated Motion to Dismiss at 5-13, (as to federal question jurisdiction conferred under the APA) at 13-15, (as to federal question jurisdiction conferred under NEPA) at 20-23, (as to federal question jurisdiction conferred under the United States Constitution under Plaintiffs' alternative theory of takings/condemnation) and at 23-26 (as to federal question jurisdiction conferred under the NPSOA and the Biscayne National Park Organic Act). Therefore, the Governor's Motion, insofar as it alleges jurisdictional deficiencies, is without merit and should be denied.

16

## CONCLUSION

WHEREFORE, Plaintiffs pray the Court will deny the Governor's Motion in its entirety and

grant Plaintiffs such other and further relief as it may deem to be just and proper.

Respectfully submitted,

Randolph L. Jones, Jr., admitted *pro hac vice*
David H. Herrold, admitted *pro hac vice*
CONNER & WINTERS,
A Professional Corporation
3700 First Place Tower
15 East Fifth Street
Tulsa, Oklahoma 74103-4344
Telephone: (918) 586-5711
Telecopy: (918) 599-9404 *fax*

*-and-*

Thomas J. Caldwell, Esq.
Michael R. Jenks, Esq.
WALTON LANTAFF SCHROEDER & CARSON
9350 Financial Centre - 10th Floor
9350 South Dixie Highway
Miami, Florida 33156
Telephone: (305) 671-1300
Telecopy: (305) 670-7065

Attorneys for the Plaintiffs,
MIAMI SPRINGS POWER BOAT CLUB, INC. and
PAUL J. SLAYDEN

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 25th day of January, 2001, he caused a true and correct copy of the above and foregoing instrument to be sent by first class mails, all postage prepaid thereon, to:

Laura W. Bonn, Esq.
Assistant United States Attorney
Federal Justice Bldg.
99 N.E. Fourth St.
Miami, Florida 33132
*Counsel for the United States of America, the Department of the Interior, the Secretary of the Interior, the National Park Service and the Director of the National Park Service*

Keith Williams, Esq.
3900 Commonwealth Boulevard
Tallahassee, Florida 32399-3000
*Counsel for Defendant Florida Board of Trustees of the Internal Improvements Trust Fund*

Jeff Glotzer, Esq.
Office of Bob Butterworth, Attorney General
110 S.E. Sixth Street, 10th Floor
Ft. Lauderdale, Florida 33301
*Counsel for Defendants State of Florida and the Florida Governor*

